UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-80371-CIV-MARRA/MATTHEWMAN

ELI LILLY AND COMPANY, by
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, as subrogee,

       Plaintiff,

v.

TYCO INTEGRATED SECURITY, LLC, F/K/A
ADT SECURITY SERVICES, INC., A
SUBSIDIARY OF TYCO INTERNATIONAL
LTD., CO., AMAURY VILLA AND AMED
VILLA,

       Defendants.
_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court upon Defendant Tyco Integrated Security LLC's Motion to Dismiss Plaintiff's Amended Complaint [DE 32].  The motion has been fully briefed by the parties and is ripe for this Court's consideration.  The Court has reviewed all papers submitted in connection with the pending motion, the entire file, and is otherwise duly advised in the premises.

**I.  Legal Standard**

With respect to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court observes first that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to

1

relief." The Supreme Court has held that "[w]hile a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'".*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

As a general rule, the Court must "limit[] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(internal quotation marks and citation omitted). Fed. R. Civ. P. 12(d) mandates that if matters outside the pleadings are presented to the court and not excluded, the motion must be treated as one for summary judgment under Rule 56. There is an exception to this rule for documents that are (1) central to the plaintiff's claim and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Undisputed means that the

authenticity of the document is not challenged. *Id*.

## II.  Background Facts

Since Plaintiff's allegations must be accepted as true for purposes of this motion, the background facts are gleaned from the Amended Complaint.

Tyco Integrated Security LLC ("TycoIS")[1] provides premises security and fire safety equipment and monitoring services under separate contracts to Eli Lilly's sales offices and distribution warehouses throughout the United States, including its Enfield, Connecticut Distribution Warehouse [DE 27 at ¶18].  On November 18, 2004, Eli Lilly and TycoIS entered into two agreements and riders for services at the Enfield facility [DE 32-1, 32-2][2]. In addition to general Terms and Conditions, the Agreements set forth the "Scope of Work".[3] The Agreements provided that an annual fee was to be paid in advance for a period of five years. Thereafter, the Agreement would be automatically renewable yearly unless terminated by either party upon written notice at least 30 days prior to the anniversary date [*Id*.].  Subsequently, various additional agreements and riders were entered into in 2005 and 2009, all containing specific descriptions of the scope of the work [DE 32-3].

---

[1]Plaintiff sued Tyco Integrated Security, LLC., f/k/a ADT Security Services, Inc., a subsidiary of Tyco International Ltd, Co. [DE 27].  Defendant states that ADT changed its name to Tyco Integrated Security ("TycoIS") on June 30, 2012 [DE 32 at 3 n.2].  Since Defendant is not raising any legal issue relative thereto, rather, it just wants the proper party to be referenced, the Court will use "TycoIS" to refer to the moving Defendant.  For ease of reference, the Court will also use "TycoIS" when referring to the original entity ADT.

[2]Defendant appended the contract to its brief.  Since the authenticity of these documents have not been challenged by Plaintiff, the Court may rely upon them in deciding this motion to dismiss as they are referred to in the Amended Complaint.

[3]The full Agreements, which were filed under seal, have been reviewed by the Court; however, the Court will not refer in this Opinion to the details redacted from the public copy.

As the contracts are scheduled to expire, TycoIS submits confidential bid proposals for Eli Lilly to evaluate [DE 27 at ¶18]. During Fall 2009, TycoIS conducted a survey and security needs assessment at Eli Lilly's Enfield facility in anticipation of preparing a new bid proposal [*Id*. at ¶¶28-32]. This culminated in the 2010 Confidential System Proposal ("2010 Proposal"), which was first presented to Eli Lilly by TycoIS on December 17, 2009 [*Id*. at ¶33].

The 2010 Proposal contains specific details, identifying by "x" and "y" coordinates the location of proposed equipment. It illustrates, explains and highlights specific faults and blind spots in the video surveillance systems at the Enfield warehouse, including those areas of the doors and bays not visible to the surveillance monitoring [*Id*. at ¶42]. It includes architectural drawings of the layout of the interior of the Enfield warehouse, with graphic overlays noting every motion detector, beam sensor, roof hatch, intercom, overhead door contact, fixed cameras (including their directional views and descriptions of items not in the camera view), panic button, card recorder, glass break sensor, contact, control panel and keypad [*Id*. at ¶43]. It highlights that the roof of the Enfield warehouse is unmonitored [*Id*. at ¶45]. It highlights the absence of internal monitoring equipment at specified locations in the warehouse [*Id*. at ¶46]. It highlights the need for and placement of recommended, additional motion detectors in the Master Control Center (MCC) in the Enfield facility [*Id*. at ¶47].

The Amended Complaint states that the revised 2010 Proposal, dated February 19, 2010, represents on its face that it is confidential. It states that "All material, information, and supplied system assessments furnished in this document are strictly confidential" "intended solely" for Eli Lilly to evaluate ADT/TYCO services as a potential vendor. It also represents that "no portion of the supplied material would be reproduced or distributed without the expressed written

4

permission of ADT/TYCO Security Services, Inc." [*Id*. at ¶41].

The 2010 Proposal expired 90 days from "the date listed on the front page of the agreement." The date listed on the front page of the agreement is February 19, 2010 [*Id*. at ¶48].

On or about December 22, 2009, Defendant Amaury Villa incorporated Trans-USA, Inc., a tractor trailer truck leasing company [*Id*. at ¶34]. On or about January 7 through January 9, 2010, Amaury Villa traveled between Miami, Florida and Enfield, Connecticut [*Id*. at ¶36]. On February 22, 2010, Amaury Villa and Amed Villa, through Trans-USA, Inc., obtained lease agreements for two tractor trailer trucks [*Id*. at ¶49]. Between February 26, 2010 and March 5, 2010, Amaury Villa travelled between Miami, Florida and Enfield, Connecticut [*Id*. at ¶50]. 51.

At 3:40 a.m. on March 14, 2010, less than a month after the date of delivery and presentation of the February 19, 2010 revised Proposal, pharmaceuticals valued in excess of $60,000,000 were stolen from the Enfield warehouse [*Id*. at ¶51]. Defendants Amaury Villa and Amed Villa and one other individual parked a tractor-trailer in the only loading bay (out of seven) identified in the 2010 Proposal to be outside the view of the existing surveillance cameras [*Id*. at ¶ 52]. They crossed the entire length of the roof of the distribution warehouse to arrive at a small area comprising less than 1% of the total surface area of the roof. This location was identified in the 2010 Proposal as above an area unmonitored by the existing security equipment and adjacent to the MCC room identified by "x" and "y" coordinates as requiring additional intrusion detection devices and cameras. Amaury Villa and Amed Villa rapelled from the small location on the roof to the unmonitored area of the warehouse; accessed the MCC room undetected by monitoring equipment; and disabled the existing security systems master controls,

telecommunications systems and cell batteries to the back-up communications systems [*Id*. at ¶53].

The equipment at the Enfield facility was operable prior to the event and did not fail; rather, it was avoided by Defendants Amaury Villa and Amed Villa. They exploited details of the layout of the warehouse and the vulnerabilities of the camera surveillance and intrusion detection systems identified by TycoIS in the 2010 Proposal to enter undetected and disable the relevant portions of the security system [*Id*. at ¶55].

The Amended Complaint contains a recitation of comparable crimes committed at other facilities utilizing TycoIS security systems. It notes that in July 2008, a Quality One Wireless warehouse in Orlando, Florida was illegally entered via a hole cut through the wall of an adjacent warehouse. Individuals knew precisely where to cut a hole between the adjoining walls to gain entry and remove cell phones and wireless equipment without triggering the security equipment. The Orlando warehouse was secured by TycoIS with alarms, motion sensors and video surveillance. No alarm wires were cut, and the TycoIS alarm system for the warehouse and inner offices were working properly at the time of this invasion [*Id*. at ¶72].

The Amended Complaint also notes that in December, 2009, Amaury Villa was arrested and pled guilty to breaking and entering the AM-C Warehouse in Grand Prairie, Texas. The security equipment and services at the Grand Prairie Texas warehouse were provided by TycoIS and included motion detectors, infrared beams and contact sensors. Prior to the theft, in or about March 2009, TycoIS had conducted a security assessment of this facility and generated a document/proposal that included a detailed map of the facility identifying the locations of the existing security equipment and inventory within the warehouse. It documented that the offices

within the warehouse were inadequately monitored by security equipment and that the halls and corridors were monitored by intrusion detection equipment. It also documented that the inventory of stored merchandise within the warehouse was cigarettes and mapped where the inventory was located.  [*Id*. at ¶¶ 77-81].

Despite the existence of an elaborate security system in place at the Grand Prairie, Texas warehouse, Amaury Villa avoided the security system by rappelling from a small location on the roof of the warehouse into the office spaces (outside the scope of detection devices).  He continued to avoid the monitored corridors and hallways by tunneling through the unmonitored office walls.  He did not remove any property within the office spaces; rather, he used the offices to avoid the monitored corridors and gain access to the warehouse area that was identified by TycoIS as storing cigarettes.  The equipment and monitoring services at the Grand Prairie, Texas warehouse did not fail, but were actively bypassed by Amaury Villa with detailed confidential technical knowledge of the system and its flaws as documented and maintained by TycoIS. [*Id*. at ¶¶ 82-84].

Defendant Amed Villa was charged in connection with the January 2010 burglary of 3,500 cases of cigarettes, valued at more than $8 million, stored at the Federal Warehouse in East Peoria, Illinois. At that time, TycoIS provided security services to the East Peoria, Illinois warehouse.  The equipment and monitoring services at the East Peoria, Illinois warehouse did not fail, but were actively bypassed by Amaury Villa, with detailed confidential technical knowledge of the system and its flaws as documented and maintained by TycoIS. [*Id*. at ¶¶ 88-90].

### III. Plaintiff's Claims

Plaintiff's Amended Complaint contains eight counts against TycoIS.[4] Count I alleges that TycoIS was negligent for failing to use care in protecting and safeguarding the confidential information regarding Eli Lilly's security infrastructure [DE 27 at 20-24]. It alleges that TycoIS knew or reasonably should have known that multiple warehouse invasions had occurred utilizing confidential information that TycoIS had acquired in connection with its security evaluations [*Id*. at ¶98]. It also alleges that TycoIS had a duty to disclose that these multiple invasions had occurred [*Id*. at ¶¶100-101].

Count II (Failure to Safeguard Confidential Information) alleges that TycoIS compiled a single document creating a comprehensive guide to Eli Lilly's security coverage and then failed to safeguard it [*Id*. at ¶¶113-119]. Count III (Failure to Disclose/Warn) alleges that TycoIS failed to warn Eli Lilly about previous incidents in which TycoIS's clients or prospective clients suffered theft losses [*Id*. at ¶¶120-126].

Count IV alleges fraudulent inducement, stating that TycoIS fraudulently induced Eli Lilly to permit it to conduct a security assessment of its existing security equipment and store that information at TycoIS's Boca Raton, Florida office. It states that Eli Lilly relied upon false representations that the documentation would remain confidential and used solely by TycoIS to evaluate Eli Lilly's security needs [*Id*. at ¶¶127-135]. Count V alleges constructive fraud against TycoIS [*Id*. at ¶¶136-144]; Count VI alleges fraudulent misrepresentation [*Id.* at ¶¶145-154]; Count VII alleges negligent misrepresentation [*Id*. at ¶¶155-163], and Count VIII alleges a

---

[4]Counts IX-XIV assert claims against the Co-Defendants, both of whom have defaulted [DE 42, 43].

violation of the Florida Deceptive Unfair Trade Practices Act ("FDUTPA") [*Id*. at ¶¶164-173].

### IV.  TycoIS' Motion to Dismiss

### A.  TycoIS argues that Eli Lilly contractually waived National Union's right of subrogation.

In support of its argument that Eli Lilly contractually waived National Union's right of subrogation against TycoIS, Defendant points to the following language in the agreement between Eli Lilly and TycoIS for security services :

> IT IS UNDERSTOOD THAT [TycoIS] IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO [TycoIS]  HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN THE CUSTOMER'S PREMISES.  CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST [TycoIS] ARISING BY WAY OF SUBROGATION.

[DE 32 at 7].

Among other arguments in response, Plaintiff states that this contractual language has no effect upon conduct that is an independent tort [DE 46 at 19].  The Court agrees. The contracts between Eli Lilly and TycoIS relate to the installation of various security equipment and monitoring relative thereto.  The allegations in the Amended Complaint relate to Defendant's alleged failure to protect confidential information it acquired in connection with the proposal it prepared to do future work for Eli Lilly; Defendant's alleged failure to warn Eli Lilly about the other invasions; and Defendant's alleged misrepresentations relative thereto.  None of these

9

relate to the contracts containing the anti-subrogation provision.  The anti-subrogation clause in the contract does not, therefore, preclude the instant action.

The Court finds the case *United States Fire Insurance Company v. ADT Sec. Serv., Inc.*, 2D12-1956, 2013 WL 5225374 (Fla. App. 2 Dist. September 18, 2013) to be persuasive authority in this regard.[5]  The Court finds the case relied upon by Defendant, *Rose v. ADT Sec. Serv., Inc.*, 989 So.2d 144 (Fla. App. 1 Dist. 2008), to be inapposite.[6]

Since the Amended Complaint raises claims independent of the contractual relationship between Eli Lilly and TycoIS, Defendant's argument that the one-year limitation of action provision in their contract bars Plaintiff's claims similarly fails.

### B.  TycoIS argues that the Connecticut statute of limitations bars this action

TycoIS argues that the relevant choice of law principles favor the application of Connecticut law to this case [DE 32 at 13-18].  It then states that the case is barred by Connecticut's statutes of limitation [*Id*. at 19-20].  Plaintiff responds that Florida law should be applied to this case [DE 46 at 8-11].

A federal court sitting in diversity applies the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Florida, that is the "most

---

[5]By relying upon this Florida case, the Court is not ruling that Florida law necessarily applies in this case.  As noted below, the Court cannot make that conflicts of law determination at this early point in the litigation.  Connecticut, like Florida, recognizes the concept of tort claims that are independent of contract claims, *see, e.g., Greenwich Interiors, LLC v. DCM Systems, LLC*, No. FSTCV085009200S, 2009 WL 765529 (Conn. Superior Ct., Jud. Dist. Stamford-Norwalk, February 25, 2009); so, no choice of law is needed to resolve this particular issue.

[6]In light of this holding, it is unnecessary for the Court to address the respective positions of the parties as to whether the contract was still in effect when the burglary occurred.

significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *See, e.g., Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).

The parties' briefs on this point make it clear that there exist factual questions that preclude a decision at this time as to which state's law will apply to this case. As Defendant points out, the Amended Complaint does not allege how, when, or where the Villas obtained the 2010 Proposal [DE 32 at 5]. It argues that the "allegation that improper conduct occurred in Florida is speculative and does not trump application of Connecticut law." [*Id*. at 15]. It is, however, equally speculative at this point to assume that improper conduct did not occur in Florida, when it has been alleged that Defendant stored the confidential information in its office in Boca Raton, Florida.

The full picture of what occurred here is currently unknown. That is not, however, a reason to deny Plaintiff discovery. At this stage of the litigation, the Court cannot fairly evaluate the significant relationship test and determine which state's law applies. Plaintiff's Amended Complaint cannot, therefore, be dismissed based upon Connecticut's statutes of limitation.

### C. TycoIS argues that Plaintiff failed to adequately plead its claims.

#### 1. TycoIS argues that the Amended Complaint does not satisfy federal pleading standards.

TycoIS argues that the Amended Complaint contains speculative and conclusory allegations that do not satisfy the minimal pleading requirements of *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) [DE 32 at 22-25]. It bases this argument on the absence of any allegations as to how, when or where the

burglars obtained the 2010 Proposal [*Id*. at 23].

The Court rejects this argument.  Essentially, Defendant's position is because Plaintiff is not in possession of every fact that would support its claims, it has failed to state a claim.  Clearly, that is not the law.

The very cases Defendant cites hold to the contrary.  The Supreme Court has held that "[w]hile a complaint attacked by a 12(b)(6) motion to dismiss **does not need detailed factual allegations**, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added, internal citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, **accepted as true**, to 'state a claim to relief that is plausible on its face.'".*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(emphasis added, quotations and citations omitted).

The Amended Complaint is far from the kind of bare bones complaint that would warrant dismissal at this stage of the proceedings.  Accepting as true the allegations in the Amended Complaint, it contains sufficient facts to state a claim that is plausible on its face.

### 2. TycoIS argues that Plaintiff did not plead recoverable damages under FDUTPA.

TycoIS relies upon *Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. Ct. App. 1984) in arguing that Plaintiff has failed to plead recoverable damages under FDUTPA.  In *Heller*, the court found that the subject of the consumer transaction was the installation of a burglar alarm system and the services performed thereon, rather than the items stolen from the house.  454 So.2d at 584.  As

noted *supra*, the instant action is premised on allegations that are independent of the installation and monitoring of the security system. The *Heller* case is, therefore, inapposite.

A claim under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation and (3) actual damages. *Mantz v. TRS Recovery Servs., Inc.,* 11-80580-CIV, 2011 WL 5515303 at *2 (S.D. Fla. Nov. 8, 2011). All three of these elements have been pled in the Amended Complaint. Whether this claim ultimately is proven and what damages may be recoverable will depend upon the evidence adduced during discovery and trial. There is no basis to dismiss this claim at this time.

### 3. TycoIs argues that Plaintiff's fraud claims and negligent misrepresentation claim fail to state claims.

TycoIS relies upon *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879 (11th Cir. 1983) for the proposition that to constitute actionable fraud, a false representation must relate to an existing or pre-existing fact [DE 32 at 26]. It then goes on to argue that the two alleged fraudulent statements, namely that the proposals would remain confidential and that no portion of the supplied material could be reproduced or distributed without the express written permission of TycoIS, both relate to future acts [*Id.*].

Although TycoIS argues in its reply papers that Plaintiff abandoned its fraud and negligent misrepresentation claims by failing to address this argument specifically [DE 49 at 7-8], Plaintiff did respond to the argument by stating that the Amended Complaint adequately pled these claims under Fed. R. Civ. P. 9(b) [DE 46 at 16-17]. Plaintiff points to additional facts throughout its Amended Complaint to support its argument. [*Id.*]. Plaintiff also alludes to "multiple occasions" when representations were made [*Id.* at 16].

Ultimately, however, Plaintiff has failed to set forth its fraud claims with the particularity required by Rule 9(b). *See, e.g,. Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001).

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Id*. at 1202 (citation omitted).

Plaintiff has requested leave to amend any claims that are dismissed by the Court [*Id.* at 23]. Since Fed. R. Civ. P. 15 provides that leave should be freely granted, the Court gives Plaintiff leave to amend Counts IV-VII should Plaintiff still seek to proceed with these claims.

### 4. TycoIS argues that the Amended Complaint should be dismissed because Plaintiff has alleged that the contract between the parties was no longer in effect.

TycoIS argues that Plaintiff's allegation that the contracts between the parties were no longer in effect means that Plaintiff "has essentially admitted that TycoIS's disclosure of the specifics of the unmonitored alarm system did not cause its alleged damages." [DE 32 at 29]. TycoIS argues that the Court should, therefore, dismiss the Amended Complaint with prejudice. [*Id*.].

First, it is well established that a party may plead alternative theories of its case. Fed. R. Civ. P. 8(d)(2). As this Rule notes: "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Second, as discussed above, the Court has held that the allegations in the Amended Complaint fall outside the parameters of the contracts that these parties entered into. Third, as further discussed herein, Plaintiff has sufficiently pled Counts I-III

and VIII and thus avoids dismissal of these Counts. The Court finds no basis to ignore these viable claims in their entirety based upon Plaintiff's allegation that the contracts were not in effect. Finally, parties on occasion continue to render services without the benefit of a contract after a contract expires. The Court is not commenting on whether or not that occurred here, rather, it is mentioned simply to explain why the Court does not view Defendant's theory as having merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Tyco Integrated Security LLC's Motion to Dismiss Plaintiff's Amended Complaint [**DE 32**] is **GRANTED IN PART AND DENIED IN PART**.

2. **Counts IV-VII** of Plaintiff's Amended Complaint are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is hereby **GRANTED LEAVE TO AMEND** these counts by filing a Second Amended Complaint on or before **March 14, 2014**.

3. Defendant's **Motion to Dismiss Counts I-III and VIII** is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 3rd day of March, 2014.

                                                  KENNETH A. MARRA
                                                  United States District Judge