# Exhibit õ3ö

Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-80371-CIV-BLOOM/HUNT

ELI LILLY AND COMPANY, by NATIONAL UNION
FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA, as subrogee.

    Plaintiff,

        -against-

TYCO INTEGRATED SECURITY, LLC., F/K/A
ADT SECURITY SERVICES, INC., A SUBSIDIARY
OF TYCO INTERNATIONAL LTD, CO., AMAURY
VILLA AND AMED VILLA.

        Defendants.

---

### NOTICE OF TAKING DEPOSITION PURSUANT TO FED.R.CIV.P. 30(b)(6)

PLEASE TAKE NOTICE that the undersigned attorney or an attorney of the firm will take the deposition of:

| Name | Date and Time | Location |
|---|---|---|
| **TYCO INTEGRATED SECURITY, LLC., F/K/A ADT SECURITY SERVICES, INC., A SUBSIDIARY OF TYCO INTERNATIONAL LTD, CO., by and through one or more officers, directors, managing agents, or corporate designees having personal knowledge of and qualified to testify as to the matters listed and described in attached Schedule "A".** | **January 9, 2015** | **DE LEO & KUYLENSTIERNA P.A. Town Center One Suite 1710 8950 SW 74th Court Miami, Florida 33156** |

DEPOSITION
EXHIBIT
#1

PENGAD 800-631-6989

Exhibit 3

CASE NO. 13-80371-CIV-BLOOM/HUNT

pursuant to Rule 30 upon oral examination before Mocega and Associates, Notaries Public, or any other notary public or officer authorized by law to take depositions in the State of Florida. The oral examination will continue from day to day until completed. This deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the rules of the Court.

Respectfully submitted,

*/s/Damon T. Hartley*
Damon T. Hartley
Fla. Bar No. 0041136
DE LEO & KUYLENSTIERNA P.A.
Town Center One
Suite 1710
8950 SW 74th Court
Miami, Florida 33156
Tel: 786-332-4909
Fax: 786-518-2849
e-mail: dhartley@dkmaritime.com

2

Exhibit 3

CASE NO. 13-80371-CIV-BLOOM/HUNT

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2014, the foregoing document was served via electronic mail on all parties on the attached service list.

/s/Damon T. Hartley
Damon T. Hartley

## SERVICE LIST
## CASE NO. 13-80371-CIV-BLOOM/HUNT

## SERVICE LIST
## CASE NO.: 13-80371

Aaron K. Kirkland
Shook, Hardy, & Bacon, LLP
2555 Grand Blvd.
Kansas City, MO 64108
816-474-6550
Email: akirkland@shb.com
Attorney for ADT/Tycos

Charles C. Eblen
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, MO 64108
816-474-6550
Email: ceblen@shb.com
Attorney for ADT/Tycos

Jason R. Scott
Shook, Hardy & Bacon, LLP
2555 Grand Blvd.
Kansas City, MO 64108
816-474-6550
Email: jscott@shb.com
Attorney for ADT/Tycos

William Patrick Geraghty
Shook Hardy & Bacon
201 S Biscayne Boulevard

3

Exhibit 3

CASE NO. 13-80371-CIV-BLOOM/HUNT

Suite 2400
Miami, FL 33131-4332
305-358-5171
Fax: 358-7470
Email: wgeraghty@shb.com
Attorney for ADT/Tycos

Jennifer A. McLoone
SHOOK, HARDY & BACON LLP
MiamiCenter, Ste. 3200
201 S. Biscayne Blvd.
Miami, FL33131-4332
Telephone: 305-358-5171
Facsimile: 305-358-7470

4

Exhibit 3

## SCHEDULE "A"

Pursuant to Fed. R. Civ. P. 30(b) (6), the deponent shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf regarding the following areas of inquiry:

Relevant accounts and warehouses are:

a) AM-C warehouse in Grand Prairie, Texas;
b) Federal Warehouse in Peoria, Illinois;
c) Eli Lilly Warehouse in Enfield, Connecticut;
d) Charles Parks Warehouse in Gallatin, Tennessee;
e) Quality One Warehouse in Orlando, Florida;
f) Core Mark Warehouse in Leitchfield, Kentucky

The relevant time frame is as set out in  [D.E. 113]

1. Establishing policies, procedures, standards, baselines and guidelines associated with developing, creating, planning, managing, reviewing, executing, implementing, maintaining, storing security reviews, security assessments, vulnerability assessments, penetration tests, security surveys, security analyses, risk assessments, or other manner of information management including:

- Documentation in which customer's and potential customer's existing premises security systems were memorialized, reviewed and commented upon.
- Conducting premises security reviews, vulnerability assessments, security surveys, penetration tests or risk assessments for the relevant customer accounts during the relevant time.
- Methods in which defendant analyzed, assessed and proposed product and service recommendations to these clients and prospective clients during the relevant time;
- Evaluations and assessments of potential exposures in Defendant's storage and information management methods and remediation that took place to reduce such vulnerabilities and exposures.

2. The Corporate policy requirements and controls for compliance with those requirements for physical and/or electronic storage mechanisms and any means for protecting the information

1

Exhibit 3

gathered and utilized in: reviewing, analyzing, drafting, storing, backing up, maintaining and monitoring, commenting upon and documenting customer and prospective customer premises security.

3. Corporate policies and procedures for establishing, monitoring and maintaining information security measures, including data protection measures, electronic malware protection, AV (anti-virus), DLP (data loss prevention), intrusion detection, intrusion prevention, firewalls, air gaps, information access to corporate servers and databases in which clients' and prospective clients' sensitive information is housed, stored and accessed; The individual(s) should be able to testify knowledgably regarding:

- information request procedures, computer system password access policies, remote access procedures and data encryption policies and controls for ensuring compliance with these policies and procedures for the relevant time frame.
- physical or electronic access control, biometrics employed, video monitoring systems, security guard or police patrols, "crypto" cards and factor authentication mechanisms utilized to provide access control for the relevant time frame.

4. Corporate policies, procedures and mechanisms for maintaining and recording access logs for any of the ADT/Tyco data and responsibility for performing updates to malware or other data security protection measures employed by Defendant generally and specifically on the relevant servers housing the relevant account information during the relevant time frame and the mechanisms for ensuring compliance; included in this category should be an individual who can testify knowledgably regarding:

     a. How relevant records and logs were reviewed and utilized during production.

     b. How relevant records and logs were backed up, stored, verified and protected at offsite facilities.

5. Corporate procedures, rules and policies regarding removal and duplication of paper or electronic data and documentation of client and prospective client premises security, generally

Exhibit 3

and specifically with regard to the relevant accounts during the relevant timeframe and the mechanisms for ensuring compliance.

6. Corporate policies, procedures and mechanisms for ensuring compliance with security of remote access to ADT/Tyco data (including documentation or memorialization of client account information and security systems and prospective client security systems generally and specifically with regard to the relevant accounts during the relevant timeframe.

7. Corporate policies, procedures and mechanisms for ensuring compliance with rules and policies regarding the authorized use and duplication (electronic or otherwise) of client information and data obtained by ADT/Tyco by any person while working both at and away from ADT/Tyco premises generally and with specific regard to the relevant accounts during the relevant timeframe.

8. Specific knowledge of service, installation and maintenance of Defendant's computer network for the servers that stored client account information for the relevant accounts during the relevant time. Included in this category should be an individual who can testify knowledgably regarding:

     a. How Defendant's relevant computers and networks were built, what hardening guides were used during their installation (for the relevant equipment at the relevant time).

     b. What Software was installed on the relevant computers and network at the relevant time. The history and manner in which that software was maintained/patched.

     c. Any security or monitoring software installed on relevant computers and networks at the relevant time (i.e. AV, firewalls, endpoint security) and how that software was maintained.

9. Specific knowledge of the IT support, records of change log and maintenance history for relevant network and/or computer equipment, data, back up methods utilized and encryption techniques utilized for stored and transmitted data. Procedures implemented for sanitizing and

3

Exhibit 3

salvaging Defendant's computer network equipment and servers that stored client account information for the relevant accounts during the relevant time.

10. Corporate policies and procedures and methods of establishing and enforcing Defendant's policies regarding utilization of personal computers, smart phones, scanners, cameras, thumb drives, portable electronic storage devices in the vicinity of Defendant's data and data of Defendant's clients' confidential information generally and with specific regard to the relevant accounts during the relevant time.

11. Corporate policies and procedures and methods of establishing and enforcing Defendant's policies regarding sanitization and salvage of old ADT/Tyco computers and hard disks generally and with specific regard to the relevant accounts during the relevant time.

12. Corporate policies and procedures and methods of backing up all servers, storing the back-up media in secure locations, management and maintenance of cataloguing or inventorying back up media and tapes, included in this category should be an individual who can testify knowledgably and with:

> a.  Direct knowledge of retention records and validation of content on back-up media and tapes.

13. Corporate policies and procedures for maintaining and storing logs and audit trails for all systems that contain sensitive information, included in this category should be an individual who can testify knowledgably and with:

> a.  Direct knowledge of how the logs and audit trails were reviewed, analyzed and processed.

14. Corporate policies and procedures and methods of establishing and enforcing and confirming compliance with Defendant's policies regarding use of and security of USB ports, Ethernet ports, Modem ports, Serial ports, Firewire ports, and CD/DVD burners on ADT/Tyco computers and laptops (physically kept, locked or sealed and/or encrypted and password protected) generally and with specific regard to ports and devices that were in related to the relevant accounts during the relevant time.

4

Exhibit 3

15. Corporate policies and procedures regarding evaluation of security policies and practices as well as incident response procedures undergone after successful invasions at warehouses where ADT/Tyco equipment and services are neutralized in accomplishing the burglary, generally and as implemented in specific regard to the relevant burglarized warehouses. Included in this category should be an individual who can testify knowledgably and with:

    a.  Direct knowledge regarding the work undertaken with respect to the relevant incidents.

    b.  Specific enhancements to security procedures and policies, changes and/or notifications and warnings issued to clients and prospective clients made generally in response to burglaries in which Defendant's equipment and services were effectively neutralized.

    c.  Incident response investigations and evaluations to determine insider threats as means of accomplishing burglaries.

    d.  Individual incident responses to the relevant burglaries at the relevant warehouses during the relevant time frame.

16. Policies and procedures for conducting and performing evaluations of the financial and criminal backgrounds of individuals with access to information about ADT/Tyco clients' confidential information, background checks performed on all ADT/Tyco employees, the nature of the personnel data collected, frequency of background checks and criteria for evaluating results of background criminal and financial checks.

17. Background evaluations and investigations of individuals convicted of the relevant crimes and connections to any current or former ADT/Tyco employees.

18. Employment, personnel and financial background checks of ADT/Tyco personnel who prepared, handled, or had access to relevant warehouse accounts and information about the premises security at the relevant warehouses including access to the 2010 ADT Proposal for Eli Lilly and information relied upon in preparing proposal information.

Exhibit 3

19. Security evaluations of physical locations that house client confidential information generally and specifically at locations where relevant accounts were serviced. Including but not limited to routine "bug sweeps" done of equipment and physical locations at ADT/Tyco, i.e., checking for unauthorized video or audio recording or transmitting devices or other wireless recording and transmitting devices.

20. Internet Service Provider(s) (ISP) who managed and maintained the equipment that stored client confidential information for the relevant accounts during the relevant time as well as electronic mail service providers.

21. Hosting ISPs and the method of email, web-hosting, or online storage services including but not limited to: virtual servers, cloud services, or physical server operations utilized by Defendant and procedures for monitoring the content of confidential information transmitted via electronic mail.

22. Policies and procedures for supervising and monitoring use of personal and business cellular providers for the mobile devices and methods of ensuring confidential security compliance generally and with specific regard to individuals servicing the relevant warehouse accounts and locations at the relevant time.

23. Running and maintaining the NOC (network operations center) with a detailed understanding of the process and procedures that are/were followed during the relevant time. The individual should possess and be capable of testifying knowledgably regarding:

   a. The technical engineering and individual responsibility for implementing and performing hands on tasks within the NOC during the relevant time frame.

24. Possessing a detailed understanding of the implementation of the processes and procedures for running and maintaining the SOC (security operations center) in existence during the relevant time. The individual should possess and be capable of testifying knowledgably regarding:

   a. The technical engineering and individual responsibility for implementing and performing hands on tasks within the SOC during the relevant time frame.

6

Exhibit 3

25. Responsibilities of the ADT National Account Support Center and their involvement with accounts associated with the relevant warehouses at the relevant time frame.

26. The services provided through and methods of populating data on "ADT Select" generally and as with specific regard to the relevant accounts at the relevant time.

27. The services provided through and methods of populating data on "MasterMind" generally and as to the relevant accounts at the relevant time.

28. The services provided through and methods of populating data on "Compass" generally and to the relevant accounts at the relevant time.

29. Information technology systems and server vulnerability scanning procedures and policies and mechanisms for ensuring compliance with vulnerability scanning procedures during the relevant time frame.

30. Information technology systems and server patch maintenance and management procedures and policies and mechanisms for ensuring compliance with patch maintenance policies and procedures during the relevant time frame.

31. Penetration testing policies and procedures as well as tests performed during the relevant time.

32. The structure and organization of defendant's data centers during the relevant time frame.

33. The security equipment configurations, updates, maintenance and monitoring activities of the premises security in place at the relevant warehouses during the relevant time frames.

34. Defendant's responses, actions and investigations to the burglaries at relevant warehouses during the relevant time frame.

35. The procedures for and methods of communication relating to the premises security equipment in place at the relevant locations and maintenance, service and monitoring of that equipment as well as the monitoring activities and history at the relevant warehouses through the relevant time at the relevant warehouses.

7

Exhibit 3

36. Policies and procedures regarding communicating and safeguarding confidential information about premises security. Individual should be able to testify knowledgably regarding responsibility and accountability for actual implementation of mechanisms for ensuring internal compliance with those procedures generally and specifically with regard to the relevant warehouses.

37. Procedures for protecting client confidential information and responsibility for remediation of non-compliance with these procedures with regard to the relevant accounts.

38. Verification and actual implementation of any and all penetration and vulnerability testing conducted during the relevant time generally and specifically with regard to information related to the relevant accounts during the relevant time.

39. Verification and actual implementation of vulnerability and patch management procedures that were required generally under industry standards and actually implemented on the servers storing relevant account information during the relevant time frame.

40. Verification and actual implementation of recording and monitoring Security Audit Trails and guidelines as implemented on the relevant servers at the relevant time frame.

41. Verification and actual implementation of the process of conducting, reviewing and utilizing employee background checks for individuals with access to sensitive client account information generally and specifically with regard to the relevant accounts. Guidelines of acceptability for background information revealed and guidelines for management of unacceptable information revealed through background checks on hire and after employment.

42. Implementation and compliance with  privacy and data collection security procedures generally and with specific regard to the relevant accounts during the relevant time.

43. The process of entering data about security equipment and in place at the "Compass" "Oracle" database generally and with specific regard to the relevant accounts during the relevant time.

44. Establishing and implementing policies and procedures for designation and management of information as "client privileged confidential" during the relevant time frame and mechanisms

8

Exhibit 3

for ensuring compliance with these procedures generally and with regard to the relevant accounts and consequences for failure to comply with appropriate designations and management of these policies and procedures generally and with specific regard to the relevant accounts during the relevant time.

45. The incident response practices implemented generally and technical incident response activity engaged in regard to these specific warehouse incidents during the relevant time frame.

46. Patch management practices conducted and implemented on the servers that housed the relevant information at the relevant time.

47. Configuration and maintenance of the relevant servers storing and managing the relevant warehouse information during the relevant time.

48. Configuration and maintenance of laptops and desktops at the relevant time.

49. Management and operation of the electronic mail server in operation during the relevant time.

50. Management and operation of the file server that was in use at the relevant time.

51. Information Technology configuration management during the relevant time.

52. Change control management to the Information Technology systems during the relevant time and through the current configuration.

53. Drafting and revising IT security and client confidential information policies and procedures during the relevant time.

54. Knowledge of information submitted by any individuals on behalf of Defendant in Affidavits or responses to discovery requests and Requests for Admission in this litigation.

55. Internal investigative practices set out by the Chief Security Officer responding to incidents in which Defendant's clients' security systems were bypassed, generally and specifically with regard to the relevant accounts during the relevant time.

9

Exhibit 3

56. Policies, procedures and practices in which Defendant undergoes analysis of the experienced modes of failure (deliberate or non-deliberate) of Defendant's premises security equipment and monitoring systems, both generally and those specifically utilized by each of the relevant warehouses during the relevant time frame. The individual should be capable of testifying knowledgably:

    a.  Including (but is not limited to) any internal evaluation of the potential and probabilities associated with spoofing/tampering/attacking the central control unit to Defendant's equipment or electronics at a customer's site.

    b.  Knowledge of specific data associated with each method of attacking Defendant's equipment and knowledge of the relative frequencies of each kind of attack both generally in the relevant locations during the relevant time period (and to date.)

57. Data regarding volume and quantity of Defendant's client base and Defendant's share of the premises security equipment and monitoring market for:

    a.  commercial warehouses generally during the relevant time frames:

        i.  Nationally
        ii.  In the relevant six states
        iii.  In the relevant six cities
        iv.  In the regions of the relevant six cities

    b.  commercial customers during the relevant time frames:

        i.  Nationally
        ii.  In the relevant six states
        iii.  In the relevant six cities
        iv.  In the regions of the relevant six cities

58. Data regarding the average number of sales approaches made by Defendant to procure new business and to enhance services at existing customer accounts:

10

Exhibit 3

     a.   commercial warehouses generally during the relevant time frames:

          i.   Nationally
         ii.   In the relevant six states
       iii.   In the relevant six cities
       iv.   In the regions of the relevant six cities

     b.   commercial customers during the relevant time frames:

          i.   Nationally
         ii.   In the relevant six states
       iii.   In the relevant six cities
       iv.   In the regions of the relevant six cities

59. The ratio of success that Defendant's sales pitches/proposals result in increased services

for:

     a.   commercial warehouses generally during the relevant time frames:

          i.   Nationally
         ii.   In the relevant six states
       iii.   In the relevant six cities
       iv.   In the regions of the relevant six cities

     b.   commercial customers during the relevant time frames:

          i.   Nationally
         ii.   In the relevant six states
       iii.   In the relevant six cities
       iv.   In the regions of the relevant six cities

60. Changes Defendant has proposed and has implemented to its premises security structure

and equipment generally and specifically at each relevant facility after each break-in, including,

but not limited to,  specific instructions, notifications, warnings about security services

equipment and climate given to each customer, as well as to employees and subcontractors of

Defendant, including:

Exhibit 3

    a.   Any conduct related to Defendant's policies and practices generally, nationally and specifically at each facility attributed to or "lessons learned" from burglaries during the relevant time frames.

61. Details of the premises security at each relevant warehouse both before and after the relevant break-ins.

62. Activities undertaken to preserve material identified in response to and as a result of receipt of litigation hold directives dispatched after the burglaries at the relevant warehouses including but not limited to the March 2010 Eli Lilly litigation hold directive.

63. Due diligence and procedures undertaken during the corporate division and restructuring of ADT and Tyco as pertains to the identification and preservation of material related to the relevant accounts and the related burglaries including material responsive to and relevant to the litigation hold directives served in response to the relevant warehouse burglaries including but not limited to the March 2010 Eli Lilly litigation hold directive.

Exhibit 3